**UNITED STATES of America, Plaintiff—Appellee,**

**v.**

**Edward MCWILLIAMS, Defendant—Appellant.**

No. 99–1221.

United States Court of Appeals, Sixth Circuit.

Jan. 9, 2001.

Before KENNEDY, SUHRHEINRICH, and MOORE, Circuit Judges.

PER CURIAM.

Defendant appeals his conviction of possession with intent to distribute a controlled substance and possession of a firearm with an obliterated serial number We AFFIRM the judgment of the district court.

## I. BACKGROUND

In the fall of 1997, DEA agent Michael Nussbaum ("Agent Nussbaum") and Detroit police officer Edward Monroe ("Officer Monroe") were part of a task force investigating a drug trafficking organization. Dion McWilliams ("Dion") was a member of the organization. On October 20, 1997, after a confidential informant introduced Officer Monroe to Dion, Officer Monroe bought $200 worth of crack cocaine from Dion. Officer Monroe asked for another $100 worth of crack, which Dion then sold to him. Then Officer Monroe said he wanted to buy "an onion," i.e., an ounce of crack. Dion said that he did not have that much, but explained that he worked for his uncle and that "his uncle" might be able to get an onion.

Two days later Officer Monroe met Dion on Concord Street in Detroit, Michigan, and bought another $200 worth of crack cocaine. Officer Monroe asked Dion if he had contacted his uncle about the onion.

Dion replied that their crack supply was low, but that his uncle was expecting a large quantity soon. Officer Monroe gave Dion his pager number and asked Dion to contact him when his uncle was ready to sell.

Meanwhile, the drug task force continued its investigation and determined that Defendant Edward McWilliams was the uncle to whom Dion referred. The task force agents also learned that the address on Defendant's driver's license is near where Dion sold crack to Officer Monroe. The drug task force also discovered that Defendant was living with his girlfriend, Sigrid Plummer, at 14602 Rochelle.

On October 28, 1997, thinking that the new supply of crack cocaine had arrived, the task force agents obtained a search warrant for 14602 Rochelle. When the task force agents executed the search warrant, they found Defendant with his girlfriend and their two children. In a small room off the master bedroom, the task force agents found a loaded pistol with its serial numbers removed on top of a cabinet. Inside the cabinet the agents found a triple beam scale with traces of cocaine and heroin. Underneath the bottom shelf of the cabinet, the agents found a hidden compartment containing a red metal box, which contained over 400 grams of crack cocaine and two boxes of razor blades. Defendant's fingerprints were lifted from the boxes. Two more loaded firearms were found among the clothes in an armoire in the master bedroom. Three other guns were found elsewhere in the house, including another pistol with an obliterated serial number. The drug task force agents also seized mail addressed to Defendant at 14602 Rochelle, including a Michigan Consolidated gas bill and an invoice for a pager. Another utility bill for that house was addressed to Ms. Plummer.

When the agents discovered the crack cocaine, they told Defendant that he and Ms. Plummer would be arrested. Hearing this, Defendant told Agent Nussbaum that the drugs and guns belonged to him and not to Ms. Plummer. The agents took Defendant's wallet, which contained a pager and phone card in Dion's name.

A jury convicted Defendant of possessing the firearms with obliterated serial numbers and possessing with intent to distribute the 417.5 grams of crack cocaine that were found in the house.

## II. DISCUSSION

### A. Hearsay

Defendant claims that the district court erred twice by admitting hearsay when it permitted Officer Monroe to testify about a conversation between Officer Monroe and Dion and by admitting double hearsay when it permitted Agent Nussbaum to testify about what Dion said to Officer Monroe. Defendant contends that this testimony substantially affected the jury's deliberations.

 The admission of evidence is reviewed for an abuse of discretion. *See United States v. Rios,* 842 F.2d 868, 872 (6th Cir.1988). But, a district court's conclusions of law are reviewed de novo. *See United States v. Levy,* 904 F.2d 1026, 1029 (6th Cir.1990); *Whitney v. Brown,* 882 F.2d 1068, 1071 (6th Cir.1989). Error may not be predicated on an evidentiary ruling unless the ruling affects a substantial right of a party and, in the case of admission, the party also must object with specificity, unless the objection is apparent from the context. *See* Fed.R.Evid. 103(a). Nevertheless, the court may notice plain error where substantial rights are affected. *See* Fed.R.Evid. 103(d). *See also Levy,* 904 F.2d at 1029 (6th Cir.1990).

"Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801. Hearsay evidence is not admissible unless an exception for its admission exists. *See* Fed.R.Evid. 802. "Double hearsay" is hearsay that contains hearsay. *See Shell v. Parrish,* 448 F.2d 528, 533 (6th Cir.1971). "Double hearsay" is inadmissible unless an exception exists for each separate level of hearsay. *See* Fed.R.Evid. 805; *see also Miller v. Field,* 35 F.3d 1088, 1090 (6th Cir.1994); *Shell,* 448 F.2d at 533.

Defendant claims that the district court erroneously admitted hearsay by permitting Officer Monroe to testify about Dion's statements that he worked for his uncle, that they were low on drugs, and that they expected more soon. The Government contends that Dion's statements are admissible as statements of a co-conspirator. Defendant responds that the evidence was insufficient to support a conspiracy and, therefore, the testimony was inadmissible.

 The hearsay statement of a co-conspirator is admissible under Fed. R.Evid. 801(d)(2)(E) if the district court finds, by a preponderance of the evidence, that (1) a conspiracy existed, (2) the person against whom the testimony is offered was a member of the conspiracy, and (3) the statement was made "during the course of and in furtherance of the conspiracy." *United States v. Bonds,* 12 F.3d 540, 573 (6th Cir.1993). It is not necessary that the defendant be charged with conspiracy. *See United States v. Talley,* 164 F.3d 989, 999 n. 4 (6th Cir.1999). However, the district court must determine by a preponderance of the evidence that the defendant was involved in a conspiracy before admitting the statement of a co-conspirator. *See Bourjaily v. United States,* 483 U.S. 171, 175–76, 107 S.Ct.

2775, 97 L.Ed.2d 144 (1987); *see also United States v. Pierce,* 62 F.3d 818, 827 (6th Cir.1995). The out-of-court statements at issue may be considered in deciding the question of admissibility. *See Bourjaily,* 483 U.S. at 180.

▮ In this case, adequate circumstantial evidence supported the conclusion that Defendant was the uncle to whom Dion referred. The two sales to Officer Monroe occurred across the street from the address on Defendant's driver's license. Defendant also had Dion's phone card in his wallet when he was arrested. Further, after Dion said his uncle would be getting "some weight," Defendant was found in possession of a large quantity of crack cocaine. Moreover, the amount of crack cocaine found in the house, the presence of razor blades and a triple beam scale near the crack cocaine, and the firearms hidden throughout the house were all probative of Defendant's intent to distribute crack cocaine. Accordingly, admission of the testimony as a statement of a co-conspirator over a hearsay objection was not erroneous.

Defendant also challenges the admission of Agent Nussbaum's testimony alluding to Dion's reference to his uncle in a conversation with Officer Monroe. Dion essentially told Officer Monroe that he worked for his uncle and that his uncle was expecting a large quantity of crack. At trial, Agent Nussbaum testified that his partner Officer Monroe accompanied a confidential informant and bought crack cocaine from Dion. Agent Nussbaum further testified, without objection, that Dion is Defendant's nephew. After Agent Nussbaum said that the task force obtained a search warrant for 14602 Rochelle, the prosecutor inquired about that location. Defense counsel objected on relevance because Defendant had not challenged the search warrant. After the objection was denied, Agent Nussbaum answered as follows:

We identified the defendant, Ed McWilliams, as being *Dion McWilliams' uncle that he was referring to in the previous day's undercover purchases by Officer Monroe.* Through our investigation we discovered that Edward McWilliams resided at 14602 Rochelle.

J.A. at 72. (emphasis added)

▮ In this testimony, Agent Nussbaum testified that Dion referred to his uncle when Dion spoke with Officer Monroe. Dion's statement was made out of court and made to Officer Monroe, not Agent Nussbaum. However, Dion's statement, as referenced in Agent Nussbaum's testimony, did not assert any action or attribute about his uncle. Presumably it was offered indirectly to establish that Dion had an uncle. Insofar as Agent Nussbaum's testimony contains hearsay by Officer Monroe and double hearsay by Dion McWilliams, we find that it does not affect any substantial rights of Defendant and, therefore, cannot be used as a predicate for error. *See* Fed.R.Evid. 103(a).

### B. Suppression of Confession

Defendant now argues for the first time on appeal that the district court should have suppressed his statement to Officer Monroe that the drugs and guns found in the house on Rochelle were his and not his girlfriend's. Defendant contends that admission of his unconstitutionally obtained confession and impermissible hearsay evidence substantially affected the jury's deliberations.

▮ A trial court has no obligation to suppress evidence sua sponte. *See United States v. Crismon,* 905 F.2d 966, 969 (6th Cir.1990). Generally, a defendant who does not specifically move to suppress a statement waives the right to appeal that issue. *See United States v. Critton,* 43 F.3d 1089, 1093–94 (6th Cir.1995); *United States v. Yannott,* 42 F.3d 999, 1005 (6th

Cir.1994). In this case, Defendant did not move before trial to suppress his confession. Therefore, in the absence of any good cause shown, we find that Defendant waived this issue.

### C. Sentencing Discrepancy

Defendant claims that this Court should reverse his sentence of 188 months of incarceration, as reflected in his written judgment of conviction, to conform to the sentence of 180 months of incarceration imposed from the bench during the sentencing hearing.

Generally, if there is a discrepancy between an orally imposed sentence and the written judgment, the oral sentence controls. *See United States v. Schultz*, 855 F.2d 1217, 1225 (6th Cir.1988). "When the orally pronounced sentence is ambiguous, however, the judgment and commitment order is evidence which may be used to determine the intended sentence." *United States v. Villano*, 816 F.2d 1448, 1450 (10th Cir.1987)(en banc).

Ambiguity exists here because the district court stated that it was imposing a sentence at the bottom of the applicable guidelines range. The guidelines range calculated in the presentence report, to which Defendant did not object, was 188 to 235 months. Thus, a sentence of 180 months would have required a downward departure. Because the written judgment comports with the court's explanation at sentencing and because the district court did not consider a departure, we conclude that a remand for clarification is unnecessary.

### III. CONCLUSION

Accordingly, we AFFIRM the judgment of the district court.