Filed: October 9, 2003

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

No. 02-4089
(CR-01-194)

---

United States of America,

Plaintiff - Appellee,

versus

Betty Anne Osborne,

Defendant - Appellant.

---

O R D E R

---

The court amends its opinion filed September 25, 2003, as follows:

On page 5, second full paragraph, line 9; and page 6, second full paragraph, line 11 -- "26 U.S.C." is corrected to read "28 U.S.C."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.                    No. 02-4089

BETTY ANNE OSBORNE,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the District of South Carolina, at Florence.
C. Weston Houck, District Judge.
(CR-01-194)

Argued: May 9, 2003

Decided: September 25, 2003

Before TRAXLER, KING, and GREGORY, Circuit Judges.

_____

Affirmed by published opinion. Judge Gregory wrote the opinion, in which Judge Traxler and Judge King joined.

_____

**COUNSEL**

**ARGUED:** Robert Nathan Boorda, Columbia, South Carolina, for Appellant. Thomas Ernest Booth, UNITED STATES DEPART-MENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** J. Strom Thurmond, Jr., United States Attorney, Rose Mary Parham, Assistant United States Attorney, UNITED STATES DEPART-MENT OF JUSTICE, Washington, D.C., for Appellee.

_____

**OPINION**

GREGORY, Circuit Judge:

On July 26, 2001, Betty Anne Osborne ("Osborne") entered a guilty plea before a magistrate judge to one count of conspiring to possess with intent to distribute cocaine and cocaine base. On appeal, Osborne challenges: 1) the quantity of drugs attributed to her for sentencing purposes; and 2) the district judge's failure to conduct *de novo* review of the Rule 11 proceedings conducted by the magistrate judge. As explained below, the court did not err in determining the quantity of drugs attributable to Osborne, and a district judge is not required, absent a defendant's request, to review *de novo* the Rule 11 proceedings conducted by a magistrate judge. Thus, we affirm Osborne's conviction and sentence.[1]

---

[1] Osborne also challenges her 188-month sentence. We note that there is a discrepancy between the 188-month sentence entered in the written criminal judgment and the sentence of 180 months that the district judge pronounced orally at the sentencing hearing. It is normally the rule that where a conflict exists between an orally pronounced sentence and the written judgment, the oral sentence will control. *See, e.g.*, *United States v. Morse*, 344 F.2d 27, 29 n.1 (4th Cir. 1965) ("To the extent of any conflict between [a] written order and [an] oral sentence, the latter is controlling."); *United States v. Daddino*, 5 F.3d 262, 266 & n.5 (citing cases). However, in this instance, the entry of a sentence of 180 months would fall below the minimum guideline sentence of 188 months. Because the sentencing transcript indicates that the district court adopted the guideline sentencing range and recognized that there was no basis for a downward departure, we view the 180-month orally pronounced sentence as ambiguous. In light of this ambiguity, we shall look to the written criminal judgment as evidence of the sentencing court's intent. *See United States v. Brown*, 47 Fed. Appx. 305, 314-315 (6th Cir. 2002) (unpublished) (finding oral pronouncement was ambiguous and looking to written criminal judgment to resolve ambiguity where the court's oral pronouncement would have placed the sentence below the guideline range); *United States v. McWilliams*, 1 Fed. Appx. 339, 344 (6th Cir. 2001) (unpublished) (same). From the written sentence, and the district judge's explicitly stated intent to follow the guidelines, we conclude that the district judge intended to sentence Osborne to 188 months and therefore affirm her written sentence.

2

## I.

During the execution of a search warrant, government agents discovered illegal drugs in Osborne's home. On Osborne's person, the agents found four grams of cocaine base. Further, Osborne's co-defendant, for whom she "cooked" cocaine into crack for the distribution thereof, was found to be in possession of more than six grams of cocaine base.

Osborne pleaded guilty to one count of conspiracy to possess with the intent to distribute five grams or more but less than fifty grams of cocaine base, in violation of 21 U.S.C. § 846. Osborne waived her right to enter a guilty plea before a district judge, and consented to have a magistrate judge accept her plea. The magistrate judge conducted a plea hearing pursuant to Fed. R. Crim. P. 11, in which he determined that there was a factual basis for Osborne's conviction. Upon accepting her guilty plea, the magistrate judge advised Osborne:

> [T]he district judge retains control and jurisdiction over your case, and that the matter of acceptance or rejection of your plea agreement and the matter of sentencing will be left to the district judge. Any perceived deficiencies in this hearing or any other matters that you may have will be taken up with the district judge at the time of sentencing.

Finally, the magistrate judge informed Osborne that, at sentencing, the district court would rely upon a written presentence report ("PSR"), to which her counsel would have an opportunity to object.

At the sentencing hearing, the district judge invited Osborne to object to or comment upon the PSR. Osborne declined, and the district judge adopted the statements contained in the PSR as its findings of fact for sentencing. The PSR reflected Osborne's admission of responsibility for the charged offense, and it recommended the related sentencing adjustment. Based upon the PSR, the district judge found that Osborne had a total offense level of 31, with a criminal history category of VI, yielding a sentencing range of 188 to 235 months. The district judge orally sentenced Osborne to 180 months. However, the district judge's written order entering judgment reflected a sentence of 188 months. At no time prior to this appeal did Osborne challenge

3

the quantity of drugs attributed to her for sentencing purposes, nor did she object to the magistrate judge's authority to conduct the Rule 11 proceedings in her case.

## II.

Because this is the first time that Osborne has challenged the quantity of drugs attributed to her for sentencing purposes, we review this issue only for plain error. *United States v. Olano*, 507 U.S. 725, 732 (1993). In order to prevail under this standard, a defendant must establish that an error occurred, that it was plain, and that it affected her substantial rights. *Id.* Further, even if a defendant can make such a showing, a reviewing court should exercise its discretion to correct such error only when it seriously affects the fairness, integrity or public reputation of judicial proceedings. *Id.*

Likewise, Osborne never requested that the district judge review the magistrate judge's authority to conduct Rule 11 proceedings, and she did not initially raise this issue on appeal. *Sua sponte*, we directed the parties to file supplemental briefs on the issue. We did so because we have an independent duty to assess jurisdictional issues, and we deem it appropriate in this case to consider the scope of a magistrate judge's authority to conduct Rule 11 proceedings. *See United States v. Dees*, 125 F.3d 261, 263 (5th Cir. 1997). Because this issue was not raised below, however, we review it for plain error.[2] *United States v. Torres*, 258 F.3d 791, 794 (8th Cir. 2001).

## III.

This appeal presents two issues: 1) whether the district court correctly calculated the quantity of drugs attributable to Osborne for sentencing purposes; and 2) whether the district court erred in failing to review *de novo* the Rule 11 proceedings conducted by the magistrate judge.

---

[2] We note that the Tenth Circuit has held that it will apply the plain error rule "less rigidly" when reviewing constitutional issues not raised during trial. *United States v. Ciapponi*, 77 F.3d 1247, 1249-50 (10th Cir. 1996). In deciding this case, however, we find it unnecessary to determine the appropriateness of such a rule.

4

A.

We first assess whether the district court correctly calculated the quantity of drugs attributable to Osborne for sentencing purposes. This issue is easily disposed of pursuant to standard principles of derivative liability. A conspirator may be held accountable for all quantities of drugs attributable to the conspiracy so long as it was reasonably foreseeable that the drugs would be involved in the conspiracy and that the drugs were possessed within the scope of the conspiratorial agreement. *See United States v. Gilliam*, 987 F.2d 1009, 1013 (4th Cir. 1993). Osborne admitted to processing cocaine base into crack cocaine for her co-defendant's distribution operation. At the time of her arrest, over ten grams of crack cocaine were found in her residence — either in her possession or in her co-defendant's possession. Under these circumstances, the district court did not err in sentencing Osborne for possession of five or more grams of crack cocaine.

B.

In order to assess whether the district judge erred in accepting Osborne's plea without conducting *de novo* review thereof, we must first consider whether the Federal Magistrates Act, 28 U.S.C. §§ 631-639 (1988) (the "Act"), authorizes a magistrate judge to preside over Rule 11 proceedings. Second, we must determine whether Article III of the Constitution requires a district judge to conduct *de novo* review of such proceedings, irrespective of a defendant's request for such review. As all of our sister circuits have determined, we conclude that the Act, pursuant to its "additional duties" clause, 28 U.S.C. § 636(b)(3), authorizes magistrate judges to conduct Rule 11 proceedings. Further, we hold that a district judge need not review such proceedings *de novo* unless a defendant requests such review.[3]

---

[3] We note that only two of our sister circuits, the Ninth Circuit in *United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir. 2003) (en banc), *petition for cert. filed*, No. 03-5303 (U.S. July 1, 2003), and the Tenth Circuit in *United States v. Ciapponi*, 77 F.3d 1247 (10th Cir. 1996), have directly addressed the question of whether *de novo* review is required regardless of a defendant's request. Both of these circuits concluded, as we do today, that such review is required only upon request. *Reyna-Tapia*, 328 F.3d at 1121; *Ciapponi*, 77 F.3d at 1251.

5

### 1. *Statutory Authorization*

Every circuit to have considered whether the Act authorizes a magistrate judge to conduct Rule 11 proceedings has held that the Act permits such a delegation. *See Reyna-Tapia*, 328 F.3d at 1119; *United States v. Torres*, 258 F.3d 791, 795-97 (8th Cir. 2001); *United States v. Dees*, 125 F.3d 261, 264-67 (5th Cir. 1997); *United States v. Ciapponi*, 77 F.3d 1247, 1250-52 (10th Cir. 1996); *United States v. Williams*, 23 F.3d 629, 632-35 (2d Cir. 1994). In reaching this conclusion, these courts have relied upon, first, the language in the Act itself, and second, the Supreme Court's decision in *Peretz v. United States*, 501 U.S. 923 (1991), which addressed whether magistrate judges may be assigned the task of supervising *voir dire* proceedings. Like our sister circuits, we conclude that the Act authorizes a magistrate judge to conduct Rule 11 plea proceedings.

In assessing the statutory question, we begin with the Supreme Court's decision in *Peretz*. There, the Court held that a magistrate judge may, if the defendant so consents, conduct *voir dire* in a criminal case. *Id.* at 932-37. On the statutory issue, the Court looked to the Act itself to determine whether a magistrate judge is authorized to preside over *voir dire* proceedings. Although the Act does not expressly authorize magistrate judges to conduct *voir dire* proceedings as a delegable duty, *see* 28 U.S.C. § 636(b)(1)(A)-(B), the "additional duties" clause does provide that "[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3). In an earlier decision, *Gomez v. United States*, 490 U.S. 858, 876 (1989), the Supreme Court concluded that, when a defendant objected, the "additional duties" clause did not authorize magistrate judges to supervise *voir dire* proceedings. As the Court discussed in *Peretz*, the *Gomez* Court was concerned that an interpretation of the "additional duties" clause to allow delegation of *voir dire* proceedings under such circumstances would raise constitutional concerns regarding whether a defendant has a "constitutional right to demand that an Article III judge preside at every critical stage of a felony trial." *Peretz*, 501 U.S. at 929. Under these circumstances, the Court in *Gomez* declined to construe the Act to authorize a magistrate judge to conduct *voir dire* in a situation where the defendant objected. *Gomez*, 490 U.S. at 874-76.

6

By contrast, in *Peretz*, where the defendant agreed to allow the magistrate judge to preside over the *voir dire* proceedings, the Court concluded that the Act authorizes such a delegation. 501 U.S. at 933. Because of the defendant's consent, the Court was not faced with the constitutional concerns that troubled the Court in *Gomez*. *Id.* at 932. Hence, the *Peretz* Court was free to examine the history and purpose of the Act to determine whether supervision of *voir dire* proceedings was an additional duty that could properly be delegated to a magistrate judge. The Court read the "additional duties" clause in light of legislative history supporting "`innovative experimentations' in the use of magistrates to improve the efficient administration of the courts' dockets," and found "[t]he Act evidences a congressional belief that magistrates are well qualified to handle matters of similar importance to jury selection but conditions their authority to accept such responsibilities on the consent of the parties." *Id.* at 934-35 (quoting H.R. Rep. No. 94-1609, at 12 (1976)). The Court defined "additional duties" to include only those duties that "bear some relation to the specified duties that the statute assigned to magistrates." *Id.* at 930 (internal quotation omitted). Applying this test, the Court concluded that the supervision of *voir dire* proceedings was comparable to expressly delegable duties, and it therefore held that the "additional duties" clause authorizes a magistrate judge to perform this function — as long as the defendant consents. *Id.* at 933.

Applying *Peretz*'s approach to "additional duties," our sister circuits have uniformly concluded that the Act authorizes a magistrate judge to preside over Rule 11 proceedings. For example, the Second Circuit, in *United States v. Williams*, concluded that magistrate judges possess the statutory authority to conduct Rule 11 proceedings. 23 F.3d at 634. In that situation, the court noted that Rule 11 itself largely dictates the steps of the plea colloquy. *Id.* at 632. Accordingly, the court concluded that the supervision of Rule 11 proceedings is less complex, and it involves less discretion, than the duties the Act expressly authorizes a magistrate judge to perform. *Id.* at 632-33 (noting that § 636(b)(1)(A) and (B) authorize magistrate judges to hear and determine certain pre-trial matters, conduct evidentiary hearings, and submit recommended findings of fact on various matters, including habeas corpus petitions). Finally, the court discussed how the Act's legislative history supports an expansive reading of delegable duties. In particular, the court noted that the Act clearly envisions that

7

magistrate judges will perform functions that extend beyond pre-trial matters. *Id.* at 633 (citing H.R. Rep. No. 94-1609, at 12 (1976)). In light of these factors, the court concluded that the "additional duties" clause should be read to allow a magistrate judge to preside over Rule 11 proceedings. *Id.* at 634.

In *United States v. Ciapponi*, the Tenth Circuit likewise held that the Act authorizes a magistrate judge to conduct Rule 11 proceedings. 77 F.3d at 1251. There, the court discussed the Supreme Court's decisions in *Peretz* and *Gomez*, and the Second Circuit's decision in *Williams*. *Id.* at 1250-51. While the court in *Ciapponi* did not draw a clear distinction between statutory and constitutional inquiries, it did make clear that, on the statutory issue, it was holding that "with a defendant's express consent, the broad residuary `additional duties' clause of the Magistrates Act authorizes a magistrate judge to conduct a Rule 11 felony plea proceeding." *Id.* at 1251. Further, the court emphasized that the availability of *de novo* review, as opposed to the exercise thereof, was a significant factor in upholding the delegation. *Id.* at 1251-52 ("[T]o the extent that defendant challenges the delegation . . . because section 636(b)(3) contains no express procedures for de novo review, the Supreme Court rejected this argument in *Peretz*. The Court held, to the extent de novo review is required . . . it need not be exercised *unless requested* by the parties." (internal quotation omitted) (emphasis added)).

Similarly, in *United States v. Dees*, the Fifth Circuit concluded that a magistrate judge has the statutory authority, pursuant to the "additional duties" clause of the Act, to preside over Rule 11 proceedings. 125 F.3d at 265-66. In addition to discussing the factors that the Second Circuit had detailed in *Williams*, the Fifth Circuit looked to one of its earlier decisions, *United States v. Rojas*, 898 F.2d 40, 42 (5th Cir. 1990), in which it had held that the Act, pursuant to § 636(b)(1), authorizes a magistrate judge to conduct an evidentiary hearing to assess the voluntariness of a guilty plea. *Dees*, 125 F.3d at 265-66. Although *Rojas* involved an express delegation under § 636(b)(1) of the Act, the court in *Dees* found that "plea proceedings bear a close relationship to the evidentiary hearing we considered in *Rojas*." *Id.* at 265. In both situations, the district judge retained, in the form of *de novo* review of a magistrate judge's decisions, the ultimate supervisory authority over the proceedings. Further, the court noted that the

8

Rule 11 plea colloquy involved "much more of a ministerial function" than the evidentiary hearing involved in *Rojas*. *Id.* at 266. Accordingly, the Fifth Circuit joined its sister circuits in construing the Act to permit delegation of the Rule 11 plea colloquy.

Finally, the Ninth Circuit, sitting *en banc*, in *United States v. Reyna-Tapia*, recently decided that the Act authorizes magistrate judges to conduct Rule 11 proceedings. 328 F.3d at 1119. The court recognized that "the taking of guilty pleas is not listed among the duties that can be designated to magistrate judges," *id.*, but it went on to analyze whether the "additional duties" clause applied. As other courts had done, the Ninth Circuit decided, in accordance with the Supreme Court's interpretation of the "additional duties" clause in *Peretz*, that the supervision of Rule 11 proceedings is similar to duties that magistrate judges are expressly authorized to perform. *Id.* Accordingly, the court joined "every other circuit examining the question in holding that the taking of a guilty plea by a magistrate judge, with the litigants' consent, qualifies as an additional duty under § 636(b)(3)." *Id.*

Like our sister circuits, we look to the approach developed by the Court in *Peretz*. The supervision of Rule 11 plea proceedings, while obviously requiring care and discretion to ensure that guilty pleas rest upon a firm factual basis, hardly dwells nigh the outlands of magistrature.[4] Applying the "additional duties" test developed in *Peretz*, we

---

[4] By contrast, in *United States v. Bryson*, 981 F.2d 720, 725-26 (4th Cir. 1992), we declined to adopt a reading of "additional duties" that would permit a magistrate judge, without the defendant's consent, to dismiss a habeas corpus petition under 28 U.S.C. § 2255. In reaching this "quite narrow" holding, *id.* at 726, we relied upon *Peretz*'s discussion of the centrality of consent in defining the scope of permissible "additional duties." *Id.* at 725 ("[T]he duties that a magistrate may perform over the parties' objection are generally subsidiary matters . . . . However, with the parties' consent, a district judge may delegate to a magistrate supervision of entire civil and misdemeanor trials."). Hence, while we recognized that allowing the magistrate judge to perform this function over the parties' objections might further the efficiency purposes of the Act, *id.* at 725, we concluded that such an interpretation would run afoul of the constitutional concerns articulated in *Peretz* and *Gomez*. We did, however, make clear that we might have decided the case differently if the defendant had properly waived his right to have an Article III judge adjudicate his habeas petition. *Id.* at 726.

9

observe that allowing a magistrate judge to supervise *voir dire* proceedings in a felony trial implicates far greater discretion than the delegation of Rule 11 responsibilities. At the same time, we note that, because both processes are fraught with constitutional concerns, a defendant must clearly waive his right to have such proceedings conducted by an Article III judge. *See Bryson*, 981 F.2d at 726. As other circuits have concluded, a magistrate judge capable of supervising an entire civil or criminal misdemeanor trial may surely perform the plea colloquy so clearly delineated in Rule 11. Additionally, as the *en banc* Ninth Circuit noted, a Rule 11 proceeding implicates issues such as voluntariness and the factual basis for guilt — issues that a magistrate judge may be asked to resolve pursuant to the duties outlined in § 636(b)(1)(a) of the Act. *See Reyna-Tapia*, 328 F.3d at 1119. Finally, it is clear that this reading of the "additional duties" clause furthers the basic purpose of the Act and permits the types of experimentation and resource utilization envisioned by Congress.

### 2. *Constitutionality and De Novo Review*

Having determined that the Act's "additional duties" clause authorizes a magistrate judge to conduct Rule 11 proceedings, we must assess whether this statutory grant is consistent with Article III of the Constitution.[5] In resolving this question affirmatively with respect to *voir dire*, the Supreme Court in *Peretz* examined two separate constitutional issues: 1) a defendant's right to the presence of an Article III judge at critical phases of trial; and 2) the structural integrity of the judiciary. 501 U.S. at 936-39. Noting that a criminal defendant may waive even his most basic procedural rights, the Supreme Court concluded that "the Constitution . . . gives no assistance to a defendant who fails to demand the presence of an Article III judge at the selection of his jury." *Id.* at 937. If a defendant may waive his right to have

_____

[5] Section 1 of Article III vests the judicial power in "one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. Art. III, § 1. The Supreme Court has interpreted this provision to limit Congress's ability to vest judicial authority in non-Article III judges. *See, e.g.*, *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 58-60 (1982) (discussing the importance of a Judiciary that is independent from the control of the Executive and Legislative branches).

an Article III judge conduct *voir dire*, we see no reason why he should not be permitted to waive his right to have an Article III judge supervise his plea colloquy.[6]

Second, turning to consider whether the delegation implicates the structural integrity of the judiciary, the Supreme Court discussed its earlier approval, in *United States v. Raddatz*, 447 U.S. 667 (1980), of a magistrate judge's authority to decide a motion to suppress:

> When a matter is referred, the judge may freely reject the magistrate's recommendation. He may rehear the evidence in whole or in part. He may call for additional findings or otherwise recommit the matter to the magistrate with instructions. Moreover, the magistrate himself is subject to the Art. III judge's control. Magistrates are appointed by district judges, and subject to removal by them.

*Peretz*, 501 U.S. at 938 (quoting *Raddatz*, 447 U.S. at 685 (Blackmun, J., concurring) (internal quotation and citations omitted)). Thus, what the Court found dispositive in its structural analysis was the preservation of the judiciary's power to review the activity of a non-Article III judge's work. *Id.* at 937 (describing district judge's supervision of magistrate judge as means of preventing congressional transfers of jurisdiction for "purpose of emasculating constitutional courts" (internal quotation omitted)). Turning to the precise nature of this power to supervise, the Supreme Court noted that *Raddatz* turned upon § 636(b)(1), which contained an express provision for *de novo* review by a district judge. Nonetheless, despite the absence of a similar provision in the "additional duties" clause, the *Peretz* Court adopted the approach articulated in *Raddatz*, where such review "need not be *exercised* unless requested by the parties." *Id.* at 939 (emphasis added) (internal quotation omitted). Hence, the Court held that it was the availability of review, upon request by the parties, rather than a required performance thereof, that safeguarded the integrity of the federal judiciary. *Id.* Such a conclusion follows logically considering that the Court's concern in the second part of its constitutional analy-

---

[6] Of course, a challenge to the waiver itself, upon the appropriate showing of error, may be raised after a plea has been entered — a factual predicate not before us today.

11

sis turned upon the structural power of the Article III court rather than the defendant's liberties.[7]

Considering the matter at hand, we again note that there is little relevant precedent regarding the constitutionality of "additional duties" clause delegations in this Circuit. In particular, we have never considered whether Rule 11 proceedings may be delegated to a magistrate judge.[8] Under *Peretz*, we are bound to decide whether the availability of *de novo* review suffices here to safeguard the integrity of constitutional courts. Osborne could have requested review by the district judge of her Rule 11 plea proceeding. However, she did not. Had the

---

[7] The power of the district judge to review a magistrate judge's performance of delegated duties will help to assure protection of the defendant's constitutional liberties.

[8] Unfortunately, one may read the opinions of our sister circuits on this issue and come away wanting some degree of clarification. In *Torres*, for example, the Eighth Circuit wrote that the Second (*United States v. Williams*, 23 F.3d 629 (2d Cir. 1994)), Fifth (*United States v. Dees*, 125 F.3d 261 (5th Cir. 1997)), and Tenth (*United States v. Ciapponi*, 77 F.3d 1247 (10th Cir. 1996)) Circuits had concluded that a magistrate judge may preside over Rule 11 proceedings, "so long as the district court exercises *de novo* review of the magistrate judge's decision." 258 F.3d at 795. Contrary to this interpretation, no circuit has held that *de novo* review is required absent a defendant's request. The Tenth Circuit in *Ciapponi* expressly rejected such a requirement, holding instead that *de novo* review is necessary only upon request. 77 F.3d at 1251-52. Furthermore, the Second Circuit was not squarely presented with the issue in *Williams* because the district court had in fact conducted such review. Nevertheless, to the extent it considered the issue at all, the court emphasized that it was the *availability* of *de novo* review that made the delegation consistent with Article III. 23 F.3d at 634 ("[T]here should be no concern that the use of a magistrate judge to allocute a defendant accused of a felony will tend to devitalize Article III courts. A district judge *may* readily read the transcript of the allocution for infirmities, if any, and *may* re-administer the allocution if it is thought necessary." (emphasis added) (citation omitted)). Finally, the Fifth Circuit in *Dees* based its finding of Article III constitutionality upon the availability of *de novo* review, rather than the exercise thereof. 125 F.3d at 268 n.7 ("Even though the Magistrates Act does not expressly provide for *de novo* review of plea proceedings, the *only constitutional requirement* is that it be available if the parties so request." (emphasis added)).

12

district judge denied such a request, we would have before us a fundamentally different case. Hence, like the Ninth and Tenth Circuits, both of which held that *de novo* review is not required where the defendant clearly consents to entering a plea before a magistrate judge and raises no objection to the Rule 11 plea proceeding, we hold that *unless* the defendant requests such review or objects to some aspect of the magistrate judge's plea colloquy, a district judge is not bound to conduct *de novo* review. That is, there is no entitlement to *de novo* review absent a request therefor.

## IV.

Finding no error in the quantity of drugs upon which Osborne's sentence was based, and finding no obligation of the district court to review the magistrate's Rule 11 colloquy, we hereby

*AFFIRM*.

13