**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-5047**

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

      v.

ANDRE PAUL MARTIN,

               Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Big Stone Gap.  James P. Jones, District Judge.  (2:09-cr-00010-jpj-pms-1)

Argued:  December 10, 2010      Decided:  September 1, 2011

Before Sandra Day O'CONNOR, Associate Justice (Retired), Supreme Court of the United States, sitting by designation, TRAXLER, Chief Judge, and KEENAN, Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Brian Jackson Beck, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Abingdon, Virginia, for Appellant.  Jennifer R. Bockhorst, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee.  **ON BRIEF:** Larry W. Shelton, Federal Public Defender, Roanoke, Virginia, for Appellant.  Timothy J. Heaphy, United States Attorney, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Andre Paul Martin pleaded guilty to a single count of escape. See 18 U.S.C. § 751(a). The district court varied upward from the advisory sentencing range of 15-21 months and sentenced Martin to 48 months' imprisonment. Martin appeals, arguing that the district court improperly considered Martin's rehabilitative needs when determining the length of his sentence. See 18 U.S.C. § 3582(a). We affirm.

I.

18 U.S.C. § 3582(a) directs district courts when "determining whether to impose a term of imprisonment" and when "determining the length" of any term of imprisonment to "consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." (Emphasis added). At the time of Martin's sentencing, this court had not addressed § 3582(a) in a published opinion, and the circuits that had considered the statute were divided as to its scope. Compare, e.g., United States v. Duran, 37 F.3d 557, 561 (9th Cir. 1994) (concluding that § 3582(a) prohibits consideration of rehabilitative needs when deciding whether to impose a term of imprisonment, but does not prohibit consideration of rehabilitation when determining

2

the length of the sentence to be imposed), with, e.g., United States v. Manzella, 475 F.3d 152, 161 (3d Cir. 2007) (concluding that § 3582(a) prohibits consideration of rehabilitative needs when determining whether to impose a term of imprisonment and when determining the length of any term of imprisonment).

The Supreme Court, however, recently resolved the uncertainty, concluding that § 3582(a) "precludes sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation." Tapia v. United States, 131 S. Ct. 2382, 2391 (2011). And as the Court's opinion makes clear, "rehabilitation" as used in § 3582(a) encompasses educational and vocational training, medical care, and other treatment programs. See id. at 2391-92; see also 28 U.S.C. § 994(k) (directing the Sentencing Commission to ensure that the Sentencing Guidelines "reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment").

## II.

Shortly after Martin was arrested on the escape charge, he was diagnosed with a "serious and chronic medical condition that [will], in all likelihood, both shorten his life expectancy

3

and require life-long treatment." Brief of Appellant at 5.[1] On appeal, Martin argues that he is entitled to resentencing because the district court violated § 3582(a) by considering his medical condition and need for treatment when determining Martin's sentence. The government, however, argues that the district court varied upward because of Martin's extensive criminal history, not his need for medical treatment. As we will explain, we believe the record establishes that the district court based its sentencing decision, at least in part, on Martin's medical condition and need for treatment.

The record reveals that Martin's medical condition played a role in the sentencing arguments made by both parties. The government moved for an upward variance from Martin's advisory sentencing range, arguing that Martin's criminal history category (Category VI, the highest category) substantially under-represented the seriousness of his criminal history and the likelihood that he would commit additional crimes in the future.

Counsel for Martin opposed that motion and urged the court to consider instead a downward variance. Counsel argued that

---

[1] The specifics of Martin's medical diagnosis appear in a sealed portion of the record, but counsel for Martin chose not to identify the condition in the brief. Because the specific diagnosis is not relevant to our analysis, we follow counsel's lead and refer to the diagnosis in general terms.

most of Martin's criminal history points were from drug crimes and misdemeanor conduct that presented no danger to society, and that given Martin's age (41 at the time of sentencing), Martin was less likely to re-offend than younger Category-VI defendants. Counsel also contended that Martin's medical condition gave Martin a newfound motivation for avoiding future criminal activity, explaining that the diagnosis had "both sharpened [Martin's] resolve for personal rehabilitation and provided him motivation to lead a sober and lawful life in order to facilitate the life-long treatment he will need to manage his medical condition." J.A. 16.

At the sentencing hearing, the government argued that an above-Guidelines sentence was warranted, noting that Martin's prior convictions were not merely for simple drug offenses, but also included robberies, escapes, and drug-distribution offenses. The government contended that Martin was a "very likely candidate to be a recidivist," J.A. 25, given his history of committing new offenses shortly after release from a prior offense. As to the medical diagnosis, the government argued that the diagnosis was

> not a reason for a downward departure, but based on his criminal history and I think what appears to be a belief by Mr. Martin that almost all is lost, that he really has nothing to lose at this point, and that is one more reason for an upward departure as a means of deterrence, and not necessarily a deterrence to other individuals in his same position, but more so as a

5

deterrence for Mr. Martin that while he is locked up he will not be out committing any further offenses.

J.A. 26-27.

The district court also addressed Martin's medical condition when announcing its sentence. After listing each of the § 3553(a) factors on the record and summarizing the information contained in the presentence report, the district court stated its view that the advisory sentencing range was inadequate. The court then turned to the arguments made by Martin in support of a below-Guidelines sentence:

> It is first argued on Mr. Martin's behalf that he has had a life change because he now knows that he has received a diagnosis for a life threatening disease; that in the words of the memorandum in his behalf will in all likelihood shorten his life expectancy and require long term treatment, and I accept that fact, of course.
>
> The problem is that based on Mr. Martin's past history, and lack of responsibility in his own life, lack of any stabilizing work or life experience, I think it is unlikely that he will take the steps necessary to obtain needed medical treatment, and not only will that harm him, but based on his past history will also leave others at risk from his disease which can easily be passed on to others.

J.A. 34. The court went on to reject the argument that Martin's age made him less likely to re-offend and the argument that a lengthy sentence would not be effective in deterring future crimes that might be committed by Martin or by others:

> [A] sentence above the guideline range is not likely, perhaps, to deter others . . . [and] I think unlikely to deter Mr. Martin. Mr. Martin has been receiving criminal sentences throughout his adult life, and he

6

obviously has not been de[t]erred.  In fact, he just left a federal prison where he committed the escape charge, and the fact that he had been in prison, obviously, did not deter him.  He simply did what he wanted to do.

. . . .

But one of the important purposes of sentencing is to incapacitate the defendant, that is, to make sure the public is protected from him for a reasonable length of time based on all the circumstances of his crime.

. . . .

In essence, I believe that Mr. Martin's prior history, and criminal history in particular, and all of his circumstances require a sentence above the guideline range.

J.A. 35-36.

According to the government, the oral statements made by the district court at sentencing unambiguously show that the sentencing decision was driven solely by the court's concern about Martin's extensive criminal history and the likelihood that he would continue to commit crimes upon his release.  We disagree.  While the statements made during the sentencing hearing show that the district court was concerned with Martin's extensive criminal history, the statements also raise the possibility that Martin's medical condition was at least a factor in the court's decision-making process.

In any event, a review of the "Statement of Reasons" filed as part of the formal criminal judgment against Martin resolves any doubt about whether the district court considered Martin's

medical condition when selecting the length of Martin's sentence. In the Statement of Reasons, the district court identified the following § 3553(a) factors as the basis for the sentence: (1) "the nature and circumstances of the offense and the history and characteristics" of Martin; (2) the need "to protect the public from further crimes" that Martin might commit; and (3) the need to provide Martin with "educational or vocational training, medical care, or other correctional treatment in the most effective manner." J.A. 75. As an explanation of the facts justifying the above-Guidelines sentence, the court stated that "[t]he defendant's criminal and <u>social history</u> require that he be incapacitated by confinement in order to protect the public <u>and provide him with needed medical treatment</u>." <u>Id.</u> (emphasis added). In our view, this explanation makes it clear that the district court in fact did consider Martin's medical condition and need for treatment when determining the length of sentence to be imposed.[2]

---

[2] Relying on the well-established general "rule that where a conflict exists between an orally pronounced sentence and the written judgment, the oral sentence will control," <u>United States v. Osborne</u>, 345 F.3d 281, 283 n.1 (4th Cir. 2003), the government argues that we should disregard the written explanation as inconsistent with the district court's oral explanation of the basis for its sentence. We disagree. The rule is typically applied when there are questions about the sentence itself (<u>e.g.</u>, the length of the sentence, the terms of supervised release) rather than about the reasoning underlying the court's decision to impose a particular sentence. Because
(Continued)

Although the district court when sentencing Martin did not have the benefit of the Supreme Court's decision in Tapia, it is now clear that the district court erred by considering Martin's medical needs when selecting the appropriate sentence. The question, then, is whether the court's error requires re-sentencing.

### A.

To determine whether the Tapia error requires resentencing, we must first determine the appropriate standard of review. This court generally reviews preserved sentencing errors for an abuse of discretion, reversing only if an error is not harmless. Errors raised for the first time on appeal, however, are reviewed only for plain error. See, e.g., United States v. Lynn, 592 F.3d 572, 575 (4th Cir. 2010). In this case, counsel for Martin did not mention § 3582(a) prior to or during

district courts are statutorily required to provide written explanations of non-Guidelines sentences, see 18 U.S.C. § 3553(c)(2), it is not obvious to us that the rule should be applied in this case in the manner suggested by the government. In any event, the general rule as described in Osborne applies when the oral pronouncement is unambiguous and in conflict with the written judgment. See Osborne, 345 F.3d 281, 283 n.1. As discussed above, the district court's oral statements suggest that the court did consider Martin's medical condition when imposing sentence, and the written explanation provided by the court therefore is not inconsistent with the court's oral statements.

sentencing or otherwise suggest to the district court that it was improper to consider Martin's health issues when imposing sentence, nor did counsel object after the sentence was announced or after reviewing the formal judgment that included the district court's Statement of Reasons explaining the sentence. Notwithstanding this failure to explicitly raise § 3582(a) before the district court, Martin, relying on United States v. Lynn, contends that he preserved his sentencing objection by arguing for a within-Guidelines sentence. We disagree.

In Lynn, we held that a defendant preserves an objection to the court's consideration of the § 3553(a) factors or its explanation of the sentence by arguing "for a sentence different than the one ultimately imposed." Lynn, 592 F.3d at 578. We rejected the government's contention that such a challenge could be preserved only by an objection made after sentence was imposed, explaining that "[b]y drawing arguments from § 3553 for a sentence different than the one ultimately imposed, an aggrieved party sufficiently alerts the district court of its responsibility to render an individualized explanation addressing those arguments, and thus preserves its claim." Id. Given the differences between the claim raised in this case and those raised in Lynn, we do not believe the manner of error preservation found sufficient in Lynn can be viewed as

10

sufficient in this case, because there was nothing in Martin's § 3553(a)-based arguments about the appropriate sentence that would have alerted the district court to Martin's claim that § 3582(a) precluded any consideration of his medical condition. See United States v. Hargrove, 625 F.3d 170, 184 (4th Cir. 2010) (applying plain-error review to claim that district court when imposing sentence improperly considered defendant's exercise of his right to trial: "This claim of error was not addressed at all in Hargrove's earlier arguments in favor of a below-Guidelines sentence. It was an alleged error that arose during the court's statements explaining the basis for the sentence it imposed. Hargrove failed to object to it at the time, thus denying the district court the opportunity to consider Hargrove's argument and correct the purported error."). Accordingly, we conclude that Martin's challenge to his sentence must be reviewed for plain error only.

## B.

Under plain-error review, Martin bears the burden of establishing that the district court erred, that the error was plain, and that the error affected Martin's substantial rights. See United States v. Olano, 507 U.S. 725, 734 (1993); United States v. Massenburg, 564 F.3d 337, 342-43 (4th Cir. 2009). Even if Martin makes the required showing, "we retain discretion

11

to deny relief." United States v. Robinson, 627 F.3d 941, 954 (4th Cir. 2010). "[P]lain errors should only be corrected where not doing so would result in a miscarriage of justice, or would otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." Id. (citation, internal quotation marks, and alteration omitted).

As we have noted, a Tapia error occurred, and we assume, without deciding, that the error was plain. Nonetheless, Martin cannot show that the Tapia error affected his substantial rights.

As a general rule, an error affects substantial rights if the error was prejudicial, which "means that there must be a reasonable probability that the error affected the outcome of the [proceeding]." United States v. Marcus, 130 S. Ct. 2159, 2164 (2010); accord United States v. McClung, 483 F.3d 273, 276 (4th Cir. 2007). To satisfy this requirement in the sentencing context, there must be a non-speculative basis in the record for concluding that the defendant would have received a lower sentence had the error not occurred. See United States v. Angle, 254 F.3d 514, 518 (4th Cir. 2001) (en banc) (explaining that a sentencing error affected the defendant's substantial rights if the sentence imposed "was longer than that to which [the defendant] would otherwise be subject"); United States v. White, 405 F.3d 208, 223 (4th Cir. 2005) (explaining that error

12

in treating the Guidelines as mandatory affects a defendant's substantial rights only if the record reveals a "nonspeculative basis for concluding that the treatment of the guidelines as mandatory affected the district court's selection of the sentence imposed" (internal quotation marks and alteration omitted)).

As previously discussed, the district court's decision to impose an above-Guidelines sentence was based on Martin's medical condition and his extensive criminal history. The district court's statements demonstrate that the court was quite concerned about Martin's criminal history, and the court clearly shared the government's view that Martin's criminal history score understated the severity of his criminal history and the likelihood that he would re-offend. The extensiveness of Martin's criminal record alone would have been sufficient to support the sentence imposed by the court, and there are no statements in the record suggesting that the court would have imposed a lesser sentence had it not considered Martin's health issues.

It is, of course, possible that the court might have imposed a lower sentence, but that simple possibility is not enough to satisfy the defendant's burden under plain-error review. Instead, the defendant must show that there is a reasonable probability that the error "actually resulted in

13

prejudice and not merely possible or speculative prejudice." Robinson, 627 F.3d at 955; cf. Marcus, 130 S. Ct. at 2164 (finding "irreconcilable with our 'plain error' precedent" the Second Circuit's practice of reversing a specific type of trial error under plain-error review whenever there is "any possibility, no matter how unlikely" of prejudice). Because there is no concrete, record-based indication that Martin would have received a lower sentence, Martin has not demonstrated that his substantial rights were actually affected by the district court's Tapia error. See Jones v. United States, 527 U.S. 373, 394-95 (1999) ("Where the effect of an alleged error is so uncertain, a defendant cannot meet his burden of showing that the error actually affected his substantial rights."); White, 405 F.3d at 223-24 (concluding that defendant did not establish that sentencing error affected the district court's selection of a within-Guidelines sentence in part because "[t]he district court made no statements at sentencing indicating that it wished to sentence White below the guideline range but that the guidelines prevented it from doing so").

III.

Accordingly, because Martin has not satisfied the stringent requirements of plain-error review, we hereby affirm his sentence.[3]

AFFIRMED

---

[3] Our conclusion that Martin has not demonstrated that his substantial rights were affected by any error in the district court's consideration of Martin's medical condition also forecloses his claims (raised for the first time on appeal) that the sentence violated the statutes governing quarantine, see 42 U.S.C. §§ 264-272, and amounted to punishment for his medical status in violation of the Eighth Amendment, see, e.g., Robinson v. California, 370 U.S. 660, 666-67 (1962).