FILED
United States Court of Appeals
Tenth Circuit

June 17, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

REBECCA BARWIG,

Defendant–Appellant.

No. 08-3062

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 6:05-CR-10155-JTM-1)**

John T. Carlson, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender for the Districts of Colorado and Wyoming, Denver, Colorado, for Defendant–Appellant.

Jared S. Maag, Assistant United States Attorney (Marietta Parker, Acting United States Attorney, and Mona L. Furst, Assistant United States Attorney, with him on the briefs), Office of the United States Attorney for the District of Kansas, Topeka, Kansas, for Plaintiff–Appellee.

Before **LUCERO**, **BALDOCK**, and **MURPHY**, Circuit Judges.

**LUCERO**, Circuit Judge.

In August 2005, Rebecca Barwig was indicted on one count of harboring and concealing a person wanted on an arrest warrant in violation of 18 U.S.C. § 1071 and § 2 as well as one count of making a false statement to a federal law enforcement officer in violation of § 1001. Pursuant to a plea agreement, she pleaded guilty to the false statement charge, which carries a five-year maximum term of imprisonment. § 1001. In exchange, the concealment charge was dismissed. On February 21, 2006, the district court sentenced Barwig to two years of probation subject to customary conditions.

A year later, a probation violation report was prepared notifying the court of violations. At a revocation hearing on June 11, 2007, Barwig admitted to certain violations and pleaded no contest to others. It is the resentencing that occurred thereafter which presents the subject matter of this appeal. In formally pronouncing sentence, the district court declared, "I am sentencing Rebecca Barwig to four months of home confinement. She then will go on supervised release for a term of two years." (Emphasis added).

In early 2008, a second violation report was filed alleging Barwig had violated the terms of the June 2007 sentence. On February 13, 2008, the district court held another revocation hearing at which Barwig pleaded no contest to each allegation in the violation report. The June 2007 sentence was revoked, and Barwig was sentenced to five years' imprisonment. Barwig appeals the five-year sentence.

At issue is whether Barwig was sentenced to supervised release or probation at the June 2007 hearing. Barwig argues that the sentence was supervised release, and as such, § 3583(e)(3) did not permit the district court to impose more than two years' imprisonment when it revoked the June 2007 sentence. In response, the government contends that the June 2007 sentence was to a term of probation, not supervised release, and accordingly § 3565(a)(2) authorized a sentence up to the statutory maximum for the underlying conviction, which in this case is five years' imprisonment under § 1001(a).

We agree with Barwig. Because the court's formal oral pronouncement of her sentence at the June 2007 hearing unambiguously imposed a term of supervised release, the sentencing court committed plain error by sentencing Barwig to five years' imprisonment when it revoked the June 2007 sentence in February 2008. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reverse the district court and remand for resentencing.

**I**

The oral sentence pronounced by the court in June 2007 is determinative of this appeal. At that hearing, after Barwig admitted to various probation violations and pleaded no contest to others, the district court declared, "I intend to find that you violated your supervised release and to revoke that term." Next, the district court informed Barwig she could receive five years' imprisonment. Further, the district court stated, "It's my intention, Ms. Barwig, to sentence you to ten

months of confinement in BOP custody. . . . That will be followed by one year of supervised release . . . ." Expanding on that statement, the district court explained, "I do intend to revoke your probation and sentence you to ten months in confinement. . . . Reimposition of a one-year term of supervised release is authorized." Barwig then addressed the district court, said that she was "terribly sorry for [her] mistakes," and asked the district court to "show [her] mercy and allow [her] to return home to get the counseling [she] need[ed]." She told the court that she no longer used drugs and knew she could change her life if permitted to return home.

In response to Barwig's plea for mercy, the district judge reconsidered his initial inclination to order incarceration: "Ms. Barwig, I'm going to take a chance on you . . . . I'm going to sentencing [sic] you to four months home confinement and two years of supervised release on the same terms and conditions." The district court then formally imposed her sentence:

> The Court: Okay. Will you stand? I'll impose your sentence:
> Based upon the violation report, the evidence and the previously-stated findings I am determining that Rebecca Barwig has violated the terms of her probation imposed the [sic] February 21, 2006. I'm revoking that term of probation. I am sentencing Rebecca Barwig to four months of home confinement. She then will go on supervised release for a term of two years. . . .
> While on supervised release you're not to commit another Federal, state or local crime. . . .

One week later, on June 18, 2007, the district court issued a written order entitled "Order Revoking and Reinstating Term of Probation." The order read:

- 4 -

"It is, therefore, by the court considered, ordered, adjudged and decreed that the defendant's term of supervised release be revoked and reinstated, for a 2 year term of supervised release . . . with the same conditions as previously imposed."

On January 23, 2008, a second violation report was filed alleging Barwig had violated the terms of the June 2007 sentence. On February 13, 2008, the district court held another revocation hearing at which Barwig pleaded no contest to each allegation in the report. Barwig had "violated the terms of supervision imposed on June 11th of 2007," concluded the district court, "and that term of supervision is revoked." It then imposed the sentence: "It is the judgment of the court that the defendant is sentenced to the custody of the Bureau of Prisons for five years."

## II

Because Barwig did not raise a § 3583 objection before the district court, we review for plain error. See United States v. Ruiz-Terrazas, 477 F.3d 1196, 1199 (10th Cir. 2007). Plain error occurs when "there is (i) error, (ii) that is plain, which (iii) affects the defendant's substantial rights, and which (iv) seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (citation omitted).

## A

Our ultimate inquiry is whether the district court erred in imposing the five-year sentence in February 2008. Neither party disputes that if the June 2007

sentence was <u>supervised release</u>, the five-year February 2008 sentence violated

§ 3583(e). Likewise, neither party contests that if the June 2007 sentence was

<u>probation</u>, the district court did not err in imposing the five-year February 2008

sentence.[1] Which, supervised release or probation, is the question.

Our answer is determined in part by the holding that "[t]he sentence orally

pronounced from the bench is the sentence." <u>United States v. Villano</u>, 816 F.2d

1448, 1451 (10th Cir. 1987) (en banc). It is undisputed that "an oral

pronouncement of sentence from the bench controls over . . . written language."

<u>United States v. Marquez</u>, 337 F.3d 1203, 1207 n.1 (10th Cir. 2003); <u>accord</u>

<u>Villano</u>, 816 F.2d at 1450 ("It is a firmly established and settled principle of

federal criminal law that an orally pronounced sentence controls over a judgment

and commitment order when the two conflict."). For this reason, only if the

orally pronounced sentence is ambiguous may a reviewing court examine a

subsequent written order to assist in interpreting the oral sentence. <u>Villano</u>, 816

F.2d at 1451-53. This rule derives from the principle that

> [t]he imposition of punishment in a criminal case affects the most
> fundamental human rights: life and liberty. Sentencing should be
> conducted with the judge and defendant facing one another and not in

---

[1] Barwig's underlying conviction for making a false statement to a federal law enforcement officer is a Class D felony. <u>See</u> 18 U.S.C. §§ 1001, 3559(a)(4). By statute, no more than two years' imprisonment is authorized when a defendant convicted of a Class D felony has her supervised release revoked. § 3583(e)(3). On the other hand, when a court revokes probation, it may resentence the defendant up to the statutory maximum, § 3565(a)(2), which in this case is five years' imprisonment, § 1001(a).

> secret. It is incumbent upon a sentencing judge to choose his words carefully so that the defendant is aware of his sentence when he leaves the courtroom.

Id. at 1452-53. If appellate courts were to comb the record in search of alternative meanings to a clearly pronounced sentence, we would undercut "important principles that underlie the traditional rule [that the orally announced sentence controls]. The legal status of the oral sentence and the right to be present at sentencing would be diluted by an intent-based approach." Id. at 1451.

In determining whether an oral sentence is ambiguous, we consider only the words used by the sentencing court in formally pronouncing a sentence. Id. at 1450-53 & 1451 n.3; see also Fed. R. Crim. P. 35(c) ("'[S]entencing' means the oral announcement of the sentence."); United States v. Mendoza, 543 F.3d 1186, 1195 n.7 (10th Cir. 2008) ("A sentence is formally imposed at the point when the district court announces it from the bench . . . ."); cf. Villano, 816 F.2d at 1453 n.6 (explaining circumstances that might amount to ambiguity). In Villano, for example, three codefendants were sentenced together at a single hearing. The government claimed an ambiguity because Villano's sentence was inconsistent with those of his two codefendants. 816 F.2d at 1450. In sentencing Villano's codefendants, the court ordered the sentences on each of three counts to run consecutively. But in sentencing Villano, the court ordered only two of the counts to run consecutively. That same day, the sentencing judge entered a written order stating that all three of Villano's sentences were to run

consecutively. Villano appealed. We reversed. We focused exclusively on the moment when the district court formally imposed the sentence and did not comb the remainder of the sentencing transcript in search of ambiguity.[2] Id. at 1451 & n.3. Our en banc court concluded that "[t]he words spoken by the district judge [were] not ambiguous." Id. at 1451. What the sentencing judge said when formally pronouncing the sentence, not what he may have intended, guided the en banc court's analysis. Id. at 1450-53 & n.3.

In the instant case, the court's words in formally imposing Barwig's sentence at the June 2007 revocation hearing were unambiguous: "I am sentencing Rebecca Barwig to four months of home confinement. She then will go on supervised release for a term of two years. . . . While on supervised release you're not to commit another Federal, state or local crime. . . . " (Emphases added). Because the district court clearly and unmistakably sentenced Barwig to a term of supervised release, those words must control, and the subsequent written

---

[2] Our reading of Villano differs from that of the dissent. The dissent contends that the ruling in Villano stems solely from an inconsistency between the formal oral sentence and the subsequent written order. See Dissent at 3. It then proceeds to conclude that Villano does not address a situation in which the purported ambiguity arose during the sentencing hearing. Id. at 3-4. We disagree. Because the en banc court reaffirmed the longstanding rule that an unambiguous oral sentence controls over a conflicting written order, Villano, 816 F.2d at 1453, Villano necessarily had to decide whether the oral sentence at issue was unambiguous, id. at 1450-51. In the course of deciding that Villano's sentence was unambiguous, the en banc court did not allow the inconsistency between the sentences of Villano and his codefendants—which arose during the same sentencing hearing—to create an ambiguity in Villano's oral sentence. Id. at 1451 & n.3.

order is trumped.[3]  Our jurisprudence leaves no space for undisclosed and unspoken judicial intent.  Id. at 1453 ("The rule that the oral sentence controls . . . avoids the murky area of determining the judge's intentions.").  Our review of the court's June 2007 sentence leaves us with no doubt that the district court sentenced Barwig to four months of home confinement followed by two years of supervised release.

**B**

Despite the clarity of the formal pronouncement of Barwig's June 2007 sentence, the dissent would search the remainder of the transcript for ambiguity.  As noted, toward the beginning of the hearing, the district court told Barwig, "Based upon your admissions and the information that's contained that's not been contested in the violation report, I intend to find that you violated your <u>supervised release</u> and to revoke that term," (emphasis added).  As there is no dispute that Barwig was serving probation at the time of the June 2007 hearing, the district court could only have meant:  "I intend to find that you violated your [probation] and to revoke that term."  This substitution of "supervised release" for

---

[3] Both sides agree that the June 18, 2007, written order is not a correction to Barwig's sentence as contemplated by Fed. R. Crim. P. 35(a), which authorizes a district court to, "[w]ithin 7 days after sentencing, . . . correct a sentence that resulted from arithmetical, technical, or other clear error."  Also conceded is that the written order is not a correction of a clerical error pursuant to Rule 36.  See Fed. R. Crim. P. 36 ("After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission.").

"probation"—in a portion of the hearing addressing the sentence the district court revoked—leads the dissent to perceive ambiguity in the district court's formal pronouncement of the sentence imposed. Relying on this supposed ambiguity, the dissent endeavors to discern the sentencing judge's intent by looking to the June 18, 2007, written order.

But the en banc court's decision in Villano forecloses this approach. As we explained above, our inquiry into whether there was ambiguity in that case ended when we determined that there was no ambiguity in the formal oral imposition of Villano's sentence.[4] And for good reason. A defendant has the right to be

_____

[4] Treating the formal oral pronouncement as the sentence is consistent with the practices in other circuits. See, e.g, United States v. Penson, 526 F.3d 331, 334 (6th Cir. 2008) (concluding that the district court's formal oral pronouncement unambiguously imposed three concurrent terms of imprisonment of 310 months each, and that the oral sentence controlled over written judgment) (quoting Villano, 816 F.2d at 1451 & 1452); United States v. Bonanno, 146 F.3d 502, 511-12 (7th Cir. 1998) (acknowledging that an unambiguous formal oral sentence would generally control over later written judgment but declining to enforce the oral sentence in the government's favor because the government did not appeal (quoting Villano, 816 F.2d at 1451)); United States v. Moyles, 724 F.2d 29, 29-30 (2d Cir. 1983) (considering only the formal oral pronouncement of sentence and holding that it was internally ambiguous).

The majority of out-of-circuit decisions relied upon by the dissent are not to the contrary. See Dissent at 4-5 (citing United States v. Marchese, 87 F. App'x 276, 278 (3d Cir. 2004) (unpublished); United States v. Osborne, 345 F.3d 281, 283 n.1 (4th Cir. 2003); United States v. Pagan, 785 F.2d 378, 380 (2d Cir. 1986)). In Marchese, the court expressly reaffirmed its rule that "[w]here the oral sentence is merely ambiguous, . . . the oral sentencing order must be construed in the context of the overall proceeding." 87 F. App'x at 278 (quotation omitted). It concluded that the formal oral sentence was facially ambiguous. Id. Marchese then applied the approach it articulated: Only after discerning facial ambiguity in the formal oral pronouncement did the court look to the hearing as a whole and

(continued...)

present at sentencing.  Fed. R. Crim. P. 43(a)(3) ("[T]he defendant must be present at . . . sentencing."); see also Villano, 816 F.2d at 1541 ("The legal status of the oral sentence and the right to be present at sentencing would be diluted by an intent-based approach.").  If that right is to mean something more than a mere entitlement to be physically present in a courtroom, it must necessarily be that the district court's unambiguous formal pronouncement of sentence controls.  A defendant must be entitled to rely on a judge's unambiguous words.  See Villano, 816 F.2d at 1452-53 ("It is incumbent upon a sentencing judge to choose his

---

[4](...continued)
the subsequent written order.  Id. at 278-79.

Similarly, in Osborne, the ambiguity resulted from the formally pronounced oral sentence that was below the then-mandatory Guidelines range.  345 F.3d at 283 n.1.  Because the district court had not departed downward—the only way to give a below-Guidelines sentence at the time—the oral sentence was unauthorized and, under the Fourth Circuit's approach, ambiguous.  Id. (citing United States v. Brown, 47 F. App'x 305, 314-15 (6th Cir. 2002) (unpublished)).  Finally, in Pagan, the Second Circuit held that the "oral pronouncement . . . taken as a whole, was ambiguous," 785 F.2d at 380 (emphasis added).  It did not hold that the hearing, taken as a whole, was ambiguous.  Id.

We acknowledge, however, that the Ninth Circuit appears to take a different approach.  See United States v. Brown, 1999 WL 369902, at *4 (9th Cir. 1999) (unpublished).  In Fenner v. U.S. Parole Commission, for example, the Ninth Circuit held, "The intent of the sentencing court must guide any retrospective inquiry into the term and nature of a sentence.  Thus, to the extent that there is an ambiguity in the sentence, we properly may consider the sentencing judge's subjective intent."  251 F.3d 782, 786 (9th Cir. 2001).  By contrast, in Villano, we rejected inquiry into a sentencing judge's subjective intent to ensure that "the defendant is aware of his sentence when he leaves the courtroom."  816 F.2d at 1451-53.

- 11 -

words carefully so that the defendant is aware of his sentence when he leaves the courtroom.").[5]

## C

Because the district court imposed supervised release in June 2007, the five-year sentence imposed in February 2008 exceeded the statutory maximum under § 3583(e)(3). A sentence that exceeds the statutory maximum is an illegal sentence, United States v. Gonzalez-Huerta, 403 F.3d 727, 739 n.10 (10th Cir. 2005) (en banc); United States v. Brown, 316 F.3d 1151, 1160 n.4 (10th Cir. 2003), and an illegal sentence is per se reversible even under plain error review. Gonzalez-Huerta, 403 F.3d at 739 n.10; see also United States v. Brooks, 438 F.3d 1231, 1242 (10th Cir. 2006) ("The imposition of an illegal sentence constitutes plain error.").

---

[5] The dissent speculates that our decision will lead to unintended or unjust results. Dissent at 4. Yet, a clear rule serves the interests of all parties. Villano laid down a clear rule: The formal oral pronouncement of sentence controls. Villano, 816 F.2d at 1451 & n.3. If there be an issue with that pronouncement, either party must immediately seek clarification. Under Villano, the dissent's hypothetical is easily analyzed. If a court mistakenly pronounces a sentence of "153 months" instead of "135 months," the defendant knows to immediately call the inconsistency to the court's attention and allow it to correct the mistake. If the numbers in the dissent's hypothetical are flipped, the government knows to immediately call the inconsistency to the court's attention and allow it to correct the mistake. If for any reason a defendant fails to "speak up," various procedural vehicles remain by which an error can be corrected. See supra note 3. Trial courts, as well, are on notice that they must choose their words carefully at the time of their oral pronouncement at sentencing.

## III

For the reasons stated, we **REVERSE** Barwig's five-year sentence and **REMAND** for resentencing in accordance with this opinion.

No. 08-3062, *United States v. Barwig*

**MURPHY**, Circuit Judge, dissenting.

In *United States v. Villano*, this court held that "[w]hen an orally pronounced sentence is ambiguous . . . the judgment and commitment order is evidence which may be used to determine the intended sentence." 816 F.2d 1448, 1451 (10th Cir. 1987) (en banc). The majority contends the district court's June 2007 oral sentence was not ambiguous, and thus under *Villano* this court may not consider the subsequent written judgment to determine the intended sentence. Maj. Op. at 8-10. In reviewing the transcript of the revocation hearing, however, it becomes apparent the oral sentence was laden with ambiguity. The district court used the terms "probation" and "supervised release" interchangeably and without precision throughout the revocation hearing.

At the conclusion of the portion of the revocation hearing when Barwig admitted the allegations of the probation violation report, the district court stated: "I intend to find that you violated your *supervised release* and to revoke *that term*." (Emphasis added). Because it is undisputed that the underlying sentence was probation, it is clear that when the court used the term "supervised release" it really meant "probation." The court then proceeded to state the sentence it intended to impose:

> I'm finding that revocation of your supervision is mandatory pursuant to statute based on your possession of a controlled substance and your refusal to comply with drug testing.

> I do intend to revoke your probation and sentence you to ten months in confinement.

In almost the next breath, after indicating his intent to "revoke [] probation," the court stated: "*Reimposition* of a one-year term of *supervised release* is authorized." (Emphasis added). In expressly indicating "reimposition," the district court was necessarily referencing the violated probation, yet it used the term "supervised release." Thus, the court again ambiguously used the term "supervised release" when it meant "probation."

> After the court heard from Barwig, it stated:

> Ms. Barwig, I'm going to take a chance on you, but I want to tell you that there are no more bites at the apple to be had. I'm going to take you at your word as you sit here this afternoon, and I'm going to hold you to what you have told me. I'm going to sentencing [sic] you to four months home confinement and two years of supervised release on the same terms and conditions.

The court indicated it would take a chance on Barwig and allow her a second chance, suggesting that this sentence would be like the first, i.e., probation. Nevertheless, like it had earlier in the hearing, the court again referenced "supervised release" when it meant "probation."

In its analysis of whether the oral sentence was ambiguous, the majority considers *only* the district court's statement "I'm going to sentenc[e] you to . . . two years of supervised release." Maj. Op. at 8. In doing so, the majority simply ignores the district court's interchangeable, imprecise use of the two terms throughout the revocation hearing, turning a blind eye to all but this one statement.

-2-

*Id.* at 8.  The majority thereby imposes a rule that this court is limited to consideration of only the words following the district court's now exclusively important phrase "I sentence you to" and must completely ignore the rest of the oral ruling, no matter its contents, in deciding whether an oral sentence is ambiguous.  *Id.* at 8-10.

The majority contends this limited approach is mandated under *Villano* because there "[w]e focused exclusively on the moment when the district court formally imposed the sentence and did not comb the remainder of the sentencing transcript in search of ambiguity."  *Id.* at 7-8.  What the majority fails to note, however, is that in *Villano* the allegation of ambiguity was based solely on the difference between the written order and, as the majority refers to it, "the moment [during the oral ruling] when the district court formally imposed the sentence." *Compare* Maj. Op. at 8, *with Villano*, 816 F.2d at 1449-1450.[1]  As a consequence, this court in *Villano* had no reason to look beyond the moment when the district court formally imposed the sentence to other portions of the sentencing transcript; this moment was the only pertinent part of the sentencing hearing.  816 F.2d at 1449-51.  In the instant case, however, the ambiguity is contained within the oral sentencing hearing and does not involve the subsequent written order.  *Villano*,

---

[1]While the court noted the defendant's sentence differed from that of his co-defendants, there was no allegation this constituted an ambiguity.  *United States v. Villano*, 816 F.2d 1448, 1450-51 (10th Cir. 1987) (en banc).

then, did not resolve or address the question presented here: Whether this court may consider the entirety of the sentencing hearing to determine whether an oral sentence was ambiguous.

The rule now created by the majority will lead to illogical, unjust, and unintended results. For example, a district court presented with an advisory Guidelines range of 135-168 months' imprisonment could state frequently and consistently its intent "to impose a sentence at the bottom of the Guidelines range" but ultimately, in the now singularly significant phrase, state, "I sentence you to 153 months' imprisonment." Even if a subsequent written order provided the intended 135-month sentence, the rule created by the majority would allow for no retreat from the unambiguous 153-month sentence.[2]

Although the majority contends its approach is necessary because "[a] defendant must be entitled to rely on a judge's unambiguous words," Maj. Op. at 10, a judge's words certainly are not unambiguous when they directly conflict with earlier statements made in the same hearing. This presumably is the reason why other courts considering this question have looked beyond the words

---

[2]The majority claims a result like this can be easily avoided by a party identifying the alleged error at the sentencing hearing or by the district court through procedural mechanisms after the hearing. Maj. Op. at 12 n.5. As is clear from this very case, however, an oral misstatement or slip of tongue by the judge during a sentencing hearing can easily be missed by both the parties and the district court. Moreover, neither the majority nor dissenter had difficulty locating cases where the parties failed to note mistakes or ambiguities in the pronouncement of sentences.

-4-

following the phrase "I sentence you" in determining whether a sentencing

ambiguity exists.[3] *See*, *e.g.*, *United States v. Osborne*, 345 F.3d 281, 283 n.1 (4th

Cir. 2003) ("Because the sentencing transcript indicates that the district court

adopted the guideline sentencing range and recognized that there was no basis for

a downward departure, we view the [below guidelines range] 180-month orally

pronounced sentence as ambiguous."); *United States v. Pagan*, 785 F.2d 378, 380

(2d Cir. 1986) (relying on a written order to resolve ambiguity in the oral sentence

where "the oral pronouncement . . . *taken as a whole*, was ambiguous") (emphasis

---

[3]The majority contends other circuits have adopted its approach, yet the cases it cites do not address whether a court may look beyond the words following the phrase "I sentence you" in determining whether an oral sentence is ambiguous. Maj. Op. at 10 n.4. For example, in *United States v. Moyles*, the court concluded the words following the phrase "I sentence you" were themselves ambiguous and thus had no reason to look beyond these words in determining whether ambiguity existed. 724 F.2d 29, 29-30 (2d Cir. 1983). Similarly, in *United States v. Penson*, while the court considered only the formal pronouncement of sentence in determining no ambiguity existed, the court did not identify whether the ambiguity alleged by the government was based solely on the formal pronouncement of sentence, a difference between the formal pronouncement of sentence and other portions of the sentencing hearing, or something else. 526 F.3d 331, 334-35 (6th Cir. 2008). If the ambiguity alleged was based solely on the formal pronouncement of sentence or the difference between the oral sentence and later written judgment, then again the court would have no reason to look beyond the formal pronouncement of sentence in determining whether ambiguity existed. Finally, the majority plucks from *United States v. Bonanno*, 146 F.3d 502, 512 (7th Cir. 1998), the court's statement that a clear and unambiguous oral pronouncement prevails over a written judgment. Maj. Op. at 10 n.4. This case, however, does nothing to support the majority's position, as it again does not address whether a court may find an oral pronouncement ambiguous if it conflicts with other portions of the sentencing hearing. *Id.*

-5-

added)); *United States v. Marchese,* No. 03-1452, 2004 WL 188329, at *2 (3d Cir.

Jan. 30, 2004) (unpublished disposition) (concluding the oral sentence was

ambiguous after considering the district court's initial expression of intent during

the oral hearing); *United States v. Brown*, No. 97-30365, 1999 WL 369902, at *4

(9th Cir. May 18, 1999) (unpublished disposition) (concluding oral sentence was

ambiguous where the sentence imposed by the district court was "contrary to the

district court's reasoning leading up to the pronouncement . . . and violate[d] the

applicable statutory and guidelines ranges").[4]

---

[4]The majority claims that except for *United States v. Brown*, No. 97-30365, 1999 WL 369902, at *4 (9th Cir. May 18, 1999) (unpublished disposition), these cases are not contrary to the new rule it creates that this court cannot look beyond the words following the phrase "I sentence you" in determining whether an oral sentence is ambiguous. Maj. Op. at 4-5 n.4. The majority is mistaken.

The majority asserts the court in *United States v. Marchese*, No. 03-1452, 2004 WL 188329, at *2 (3d Cir. Jan. 30, 2004) (unpublished disposition), sets out the following rule: "Only after discerning facial ambiguity in the formal oral pronouncement [can] the court look to the hearing as a whole and the subsequent written order." Maj. Op. at 10 n.4. This reading of *Marchese* is erroneous. In determining the oral sentence at issue was ambiguous, the very first step in its analysis, the *Marchese* court expressly relied upon the inclination initially expressed by the judge during the oral proceeding. *Id.* at *2-3. The court looked to the sentencing hearing as a whole to determine whether ambiguity existed, and after finding ambiguity used the written order to clarify the sentence. *Id.* Specifically, *after* considering the district court's initial inclination, the court stated, "We therefore conclude that an ambiguity existed in the oral sentencing order, but that the written order resolved that ambiguity and that Marchese was required to pay $4,199 in restitution as a term of his supervised release." *Id.* at *3. Thus, the majority's statement that in *Marchese* "[o]nly after discerning facial ambiguity in the formal oral pronouncement did the court look to the hearing as a whole and the subsequent written order," is simply incorrect.

The majority also contends that in *United States v. Osborne*, 345 F.3d 281,

(continued...)

-6-

Because the district court's interchangeable and imprecise use of the terms "probation" and "supervised release" throughout the oral hearing resulted in an ambiguous oral sentence, the majority should have looked to the subsequent written order to help resolve the ambiguity. *United States v. May*, 52 F.3d 885, 893 (10th Cir. 1995) (stating this court may consider a succeeding written order to clarify an ambiguous oral sentence); *Villano*, 816 F.2d at 1450-51 (same). A week after the June 2007 hearing the district court issued a written order entitled "ORDER REVOKING AND REINSTATING TERM OF PROBATION." The title makes clear that the district court intended to reinstate probation. Even though it is undisputed that the revoked sentence was a term of probation, in the text of the order the district court, as it did at the hearing, referred to the underlying sentence

---

[4](...continued)
283 n.1 (4th Cir. 2003), the Fourth Circuit concluded ambiguity existed solely because the oral sentence was unlawful. Maj. Op. at 10-11 n.4. In addition to providing an unlikely summation of the Fourth Circuit's approach, the majority ignores the court's stated reason for its determination that ambiguity existed: that "the sentencing transcript indicates that the district court adopted the guideline sentencing range and recognized that there was no basis for a downward departure." 345 F.3d at 283 n.1. Thus, the Fourth Circuit did not rely simply upon the unlawfulness of the oral sentence in determining ambiguity, but instead looked to the court's earlier statements during the hearing.

Finally, contrary to the majority's assertion, in *United States v. Pagan*, 785 F.2d 378, 380 (2d Cir. 1986), the court looked beyond the formal pronouncement of sentence in determining the "oral pronouncement . . . taken as a whole, was ambiguous." Specifically, in determining ambiguity existed the court looked to "a colloquy with the court *immediately after pronouncement of sentence*." *Id.* (emphasis added). Thus, each of these cases is contrary to the rule established by the majority.

-7-

as supervised release. In articulating its sentencing intent, the district court ordered "that the defendant's term of supervised release be revoked and *reinstated*" (emphasis added). The text thereby indicates the district court intended to "reinstate" the sentence which had been revoked, i.e., the underlying undisputed sentence of probation. This written order, from its title through its text, is thus helpful in clarifying the ambiguities in the oral sentence and indicating reinstatement of probation was intended. The majority should have looked beyond the words following the phrase "I sentence you" to recognize the ambiguity in the district court's oral ruling and used the written order to aid in the resolution of the ambiguity. Because the written order clarifies the district court's intent to reimpose probation at the June 2007 hearing, I would affirm the district court's imposition of a five-year sentence at the February 2008 revocation hearing.